ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel. Plaintiff Julia Ann Martino ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 10) is denied.
BACKGROUND
Plaintiff protectively filed her application for DIB on February 13, 2014. (Dkt. 7 *121 at 68, 182-88).[2] In her application, Plaintiff alleged disability beginning June 22, 2012, due to: posttraumatic stress disorder ; severe anxiety/depression; inability to drive; fear of bad weather, driving, and mistreatment; difficulty interacting with others; inability to function; decreased memory; repetitive nightmares; difficulty sleeping; and high blood pressure and cholesterol. (Id. at 182, 192). Plaintiff's applications were initially denied on May 7, 2014. (Id. at 68-80, 86-96). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Jack D. McCarthy on May 19, 2016. (Id. at 164-65, 33-67). The ALJ presided over the hearing from Kansas City, Kansas, and Plaintiff appeared and testified in Buffalo, New York. (Id. ). On June 22, 2016, the ALJ issued an unfavorable decision. (Id. at 14-28). Plaintiff requested Appeals Council review on July 23, 2016 (id. at 166); her request was denied on August 25, 2017, making the ALJ's determination the Commissioner's final decision (id. 4-9). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at *122 least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2018. (Dkt. 7 at 19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 22, 2012, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of major depressive disorder, recurrent, and posttraumatic stress disorder (PTSD). (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of high blood pressure, chronic pain syndrome, irritable bowel syndrome, and hypertension were non-severe. (Id. at 19-20).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 20). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (Id. at 20-21).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform full range of work at all exertional levels as defined in 20 C.F.R. § 404.1529 and SSR 96-4, with the additional nonexertional limitations that Plaintiff:
is able to understand, remember, and carry out simple and detailed instructions that can be learned in 6 months or less, but not complex instructions; she can have occasional interaction with the public, co-workers, and supervisors; and she should avoid jobs that pose a risk of violence.
(Id. at 21). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 26).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there *123 were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of merchandise marker, routing clerk, and photocopy machine operator. (Id. at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 27-28).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse the determination of the Commissioner, or in the alternative, to remand this matter to the Commissioner for further administrative proceedings, arguing that the RFC determination is not supported by substantial evidence because (1) in assessing Plaintiff's RFC, the ALJ failed to adopt the more restrictive findings of Thomas H. England, Ph.D., as to Plaintiff's limitations, and (2) the ALJ mischaracterized the medical opinions of Richard G. Bennett, M.D., and Bonnie Collins, a licensed clinical social worker. (Dkt. 10-1 at 15-25). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. Assessment of Plaintiff's RFC
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).
Further, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:
the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin, No. 14-CV-159-JTC, 2015 WL 1280484 at *5, 2015 U.S. Dist. LEXIS 35143 at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin, 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ). Likewise, an ALJ is not required to "explicitly ... reconcile every conflicting shred of medical testimony," so long as the ALJ carefully considers all of the evidence in reaching a determination. Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).
Here, the ALJ assessed Plaintiff's RFC by carefully considering all of the opinions in Plaintiff's medical record, including: the results of Plaintiff's April 7, 2014 examination by the State agency; four visits with a *124 licensed clinical social worker; psychiatric evaluations between September 2014 and February 2016; testimony by Dr. England, based on his review of Plaintiff's medical record; an opinion by the State psychological consultant, Dr. Hoffman; the opinion of Christine Ransom, Ph.D., a consultative examiner; the opinion of Richard G. Bennett, M.D., a treating psychiatrist; and the opinion of Bonnie J. Collins, a licensed clinical social worker. (Id. at 22-26).
B. Assessment of Plaintiff's RFC in Relation to Dr. England's Opinion
Plaintiff first takes issue with the ALJ's assessment of Dr. England's opinion. In his written determination, the ALJ accurately summarized Dr. England's testimony, including Plaintiff's diagnoses of major depressive disorder and PTSD. The ALJ also referred to specific portions of Dr. England's testimony, including his identification of certain inconsistencies in the record relating to Plaintiff's work limitations under the "paragraph B" criteria of Listing 12.06. (Id. at 23-24).
At the hearing, Dr. England testified extensively as to Plaintiff's medical record, including inconsistencies regarding Plaintiff's work limitations under the "Paragraph B" criteria of listing 12.06. (Id. at 40). Specifically, as the ALJ referred to in his written determination, Dr. England discussed Dr. Bennett's treatment of Plaintiff. (Id. ). Dr. England testified that Dr. Bennett's treatment notes from September and October 2014 showed progress, in both Plaintiff's mood and GAF scores. (Id. at 40-41). Dr. England explained that these positive notes on Plaintiff's progress were at odds with Dr. Bennett's medical source statement at Exhibit 11F, in which he rated Plaintiff as deficient in several categories of mental functioning and found that Plaintiff could not engage in full-time competitive employment. (Id. at 41).
Dr. England further noted inconsistences between an opinion by Dr. Ransom, who found Plaintiff's impressions and limitations to be mild to moderate, and a conflicting statement by Ms. Collins, who felt that Plaintiff would be unable to work due to her anxiety. (Id. ). Dr. England likewise noted that Ms. Collins later indicated that she could not give a medical opinion as to Plaintiff's work ability or capability. (Id. ). Dr. England also noted that Ms. Collins's notes indicated that Plaintiff denied any significant anxiety or depression, and that Plaintiff presented with a normal mood and affect. (Id. ). After discussing these specific inconsistencies in the record, Dr. England found:
I would say activities of daily living appear likely mildly impaired, certainly within the home, but based on the CE by Dr. Ransom and based on the GAF provided by Dr. Bennett I would say there may be moderate levels of limitation and they would be likely more outside the home, likely with unfamiliar individuals. I would say social functioning much the same, mild to moderate generally, concentration, persistence and pace mild to moderate, possibly more. If she were in a situation that resulted in triggering some of the PTSD issues that apparently weren't still well resolved, if she were confronted with aggressive or violent interpersonal situation, I suspect that would be difficult and result in some difficulties with - with concentration and - and persistence, as well as possibly social, of course, that under those circumstances primarily it would appear. And I don't see any indication of extended decompensation ... the psychiatric progress notes suggest a fairly stable, fairly high level of functioning. A GAF of 80 would indicate no more than mild levels of overall impairment. But *125 there may be some episodes where the PTSD is triggered where it would rise above that.
(Id. at 42-43). The ALJ ultimately assigned Dr. England's opinion "significant weight," as it was "well supported by reference to the objective evidence as a whole and was based upon his comprehensive review of the available medical evidence." (Id. at 24).
The ALJ determined that Plaintiff retained the RFC to perform full range of work at all exertional levels, with the additional nonexertional limitations that Plaintiff:
is able to understand, remember, and carry out simple and detailed instructions that can be learned in 6 months or less, but not complex instructions; she can have occasional interaction with the public, co-workers, and supervisors; and she should avoid jobs that pose a risk of violence.
(Id. at 21).
Plaintiff does not contest the ALJ's assignment of "significant weight" to Dr. England's opinion, but rather argues that the assessed RFC is not as limiting as the opinion provided by Dr. England. (Dkt. 10-1 at 15, 17). In particular, Plaintiff contends that Dr. England's opinion is "far more limiting" than the ALJ's RFC. (Id. at 19). However, review of the record reveals that Plaintiff's contention is a mischaracterization, and there are no notable differences between Dr. England's opinion and the assessed RFC. In particular, the ALJ appears to have adopted Dr. England's stance on significantly limiting Plaintiff's interaction with the public and Plaintiff's avoidance of jobs that would trigger her PTSD, where Plaintiff would be placed in situations involving aggression or violence.
The ALJ's written determination is clear that the opinions of Dr. Hoffman and Dr. Ransom also informed the assessed RFC, with regard to Plaintiff's ability to interact with others and handle stress. Specifically, the ALJ discussed Dr. Hoffman's opinion, to which he assigned "some weight," including that Dr. Hoffman found Plaintiff was "capable of performing simple work in a low contact setting, with a somewhat reduced ability to deal with supervisors and co-workers." (Id. at 24; see also id. at 69-80). The ALJ also discussed Dr. Ransom's opinion, to which the ALJ assigned "significant weight," including that Plaintiff had "mild to moderate" difficultly relating adequately with others and dealing with stress. (See id. at 24; see also id. at 283-86). These opinions are consistent with the ALJ's assessment that Plaintiff can have occasional interaction with the public, co-workers, and supervisors, as well as that Plaintiff should avoid jobs that pose a risk of violence.
Further, the ALJ's assessment that Plaintiff can carry out simple and detailed instructions, but not complex instructions, is consistent with Dr. England's opinion that Plaintiff have moderate to mild limitations in concentration, persistence and pace, particularly considering Plaintiff's high level of functioning and assessed GAF. See, e.g., Eby v. Colvin, 227 F.Supp.3d 275, 279-80 (W.D.N.Y. 2017) ("The RFC determined by the ALJ, which limits plaintiff to performing low-stress, goal-oriented work (and not production pace work), involving only simple tasks, adequately accounts for plaintiff's moderate limitations in attention and concentration."). This assessment is also consistent with the opinion of Dr. Ransom who, as noted by the ALJ in his opinion, found that Plaintiff "showed no evidence of difficulty in following and understanding simple directions or instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple and regular schedule, and learning simple new tasks," but would *126 have mild to moderate difficulty "performing complex tasks." ( Id. ). In other words, each portion of the assessed RFC is consistent with medical opinions in the record.
It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Matta, 508 F. App'x at 56 ; see also Thomas v. Berryhill, No. 16-CV-6244L, 337 F.Supp.3d 235, 244-45, 2018 WL 4725308 at *6, 2018 U.S. Dist. LEXIS 170267 at *18-19 (W.D.N.Y. Oct. 2, 2018) (where the ALJ did not "explicitly mention" two limitations in his assessed RFC, noting that an ALJ is not required to assess every item of testimony presented, and holding that the "ALJ's findings were explained with sufficient specificity to permit meaningful review by this Court...."); Hayes v. Berryhill, No. 17-CV-6354-FPG, 2018 WL 3069116 at *7, 2018 U.S. Dist. LEXIS 104120 at *18 (W.D.N.Y. June 20, 2018) (finding no error where the "ALJ did not adopt any opinion in its entirety" but "several RFC findings were consistent with portions of each opinion," and the RFC was supported by medical evidence). The fact that the assessed RFC does not perfectly correspond with Dr. England's testimony does not require remand, particularly where the ALJ explained, in detail, how he arrived at the assessed RFC. In sum, the Court finds that the assessed RFC is consistent with Dr. England's opinion, and with other medical opinions in the record and is therefore supported by substantial evidence. Plaintiff's motion is denied on this point.
C. Characterization of the Opinions of Dr. Bennett and Ms. Collins
Plaintiff next argues that the ALJ mischaracterized the medical opinions of Dr. Bennett and Bonnie J. Collins, a licensed clinical social worker. (Dkt. 10-1 at 20-25). In assessing Plaintiff's RFC, the ALJ gave these opinions "little weight." (Dkt. 7 at 24-25).
Plaintiff began treating with Dr. Bennett in September 2014, and continued treatment through February 2016. (Id. at 301-10, 330-31). Dr. Bennett's findings regarding Plaintiff's mental health during these visits are largely benign, a fact noted by Dr. England at Plaintiff's administrative hearing. (Id. at 40-41). For example, on September 5, 2014, Dr. Bennett described Plaintiff's mental status to be cooperative, alert and oriented. (Id. at 302). Plaintiff had good recall, short-term memory, long-term memory, and concentration. (Id. ). Plaintiff's GAF was 70. (Id. ). Dr. Bennett also noted weaning Plaintiff off Zoloft and starting her on Paxil. (Id. ). On October 15, 2014, Plaintiff reported to Dr. Bennett that she felt "better," and that her energy levels had improved. (Id. ). Dr. Bennett's psychiatric medical exam revealed that Plaintiff was cooperative and had clear thought processes, as well as fair attention span and concentration, and intact memory, judgment and insight. (Id. ). Plaintiff's GAF improved to 80. (Id. at 304). On February 26, 2015, Plaintiff again informed Dr. Bennett that she was "better." (Id. at 305). Dr. Bennett's exam revealed an improvement in Plaintiff's mood. (Id. ). Plaintiff was cooperative and had clear thought processes; fair attention span and concentration; and intact memory, judgment and insight. (Id. ). Plaintiff's GAF remained at 80. (Id. at 306). On August 4, 2015, Plaintiff reported that she was feeling "better." (Id. at 307). Findings from Dr. Bennett's psychiatric exam remained the same. (Id. ). Plaintiff's GAF remained at 80. (Id. at 308). On November 4, 2015, Plaintiff reported feeling "okay." (Id. at 309). Findings from Dr. Bennett's psychiatric exam remained the same. (Id. ). Plaintiff's GAF remained at 80. ( *127 Id. at 310). On February 26, 2016, Plaintiff reported feeling "okay." (Id. at 330). Dr. Bennett's psychiatric exam again revealed that Plaintiff was cooperative, and had clear thought processes; fair attention span and concentration; and intact memory, judgment and insight. (Id. ). Plaintiff's GAF remained at 80. (Id. at 331). Throughout these records, Dr. Bennett made brief notes that Plaintiff reported that work made her "too anxious." (Id. at 303, 305, 307, 309, 330).
Thereafter, in March 2016, Dr. Bennett completed a Mental Residual Functional Capacity Questionnaire. (Id. at 334-339). Dr. Bennett noted, as he did in his prior appointment notes, that Plaintiff becomes anxious when thinking about work and feels better when she is off work. (Id. at 334). Dr. Bennett assessed all of Plaintiff's mental abilities as being limited in some way, including that she was unable to meet competitive standards in the following categories: maintaining attention for a two-hour segment; maintaining regular attendance; sustaining an ordinary routine; working in coordination with or proximity to others; completing a normal workday and workweek; performing at a consistent pace; and dealing with normal work stress. (Id. at 335). Dr. Bennett also found that Plaintiff was unable to meet competitive standards in her ability to understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independent of others; and deal with stress of skilled or semiskilled work. (Id. at 337). Dr. Bennett further found that Plaintiff would be absent from work more than four days per month. (Id. at 338). Dr. Bennett ultimately opined that Plaintiff could not engage in fulltime competitive employment on a sustained basis. (Id. ).
The ALJ adequately explained his reasoning for assigning "little weight" to Dr. Bennett's medical source statement. The ALJ discussed, at length, Dr. Bennett's medical source statement, and highlighted those categories for which Dr. Bennett opined that Plaintiff had "serious limitations" or would be "unable to meet competitive standards." (Id. at 24-25). The ALJ noted that Dr. Bennett's opinion was inconsistent with the record as a whole and with his own treatment notes, a fact also noted by Dr. England. (Id. at 25). The ALJ cited to specific inconsistencies in Dr. Bennett's treatment records, including Plaintiff's reporting that her anhedonia and energy levels were improving and Plaintiff's high GAF scores. (Id. ). The ALJ's assigning little weight to Dr. Bennett's opinion was proper in this instance. See Matta, 508 F. App'x at 57 (ALJ may discount the opinion of a treating physician if the ALJ believes that the opinion lacks support or is internally inconsistent). The Court has reviewed the medical records from Plaintiff's treatment with Dr. Bennett and finds that the ALJ's assessment of these records is reasonable.
In arguing that the ALJ mischaracterized Dr. Bennett's opinion, Plaintiff focuses on Dr. Bennett's medical source statement, in which he found Plaintiff deficient in almost every category of mental functioning. (Dkt. 10-1 at 22-23). In this sense, Plaintiff's argument is misplaced. The ALJ did not mischaracterize Dr. Bennett's opinion; rather, as previously explained, he found that the medical source statement was inconsistent with the record, and Dr. Bennett's own treatment notes. Plaintiff further argues that the ALJ failed to consider that any improvement in Plaintiff's symptoms would deteriorate with the stress of working. (Id. at 22). However, the ALJ did consider Plaintiff's increased stress level when working, particularly when she was required to interact with others. This issue was highlighted by Drs. England, Hoffman, and Ransom ( *128 id. at 23-24), and clearly informed the assessed RFC, which significantly curtails Plaintiff's interactions with the public, co-workers, and supervisors, as well as her fitness for jobs posing a risk of violence.
Plaintiff next contends that the ALJ mischaracterized the opinion of Ms. Collins, Plaintiff's licensed clinical social worker. (Dkt. 10-1 at 23). At the outset, the Court notes that a licensed clinical social worker is not an "acceptable medical source"; accordingly, their opinions are not entitled to controlling weight. Conlin v. Colvin, 111 F.Supp.3d 376, 386 (W.D.N.Y. 2015) (citing Piatt v. Colvin, 80 F.Supp.3d 480, 493 (W.D.N.Y. 2015) ). However, an ALJ "should consider information from 'other sources,' such as social workers, which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to work.' " Krach v. Colvin, No. 13-CV-1089 (GTS/CFH), 2014 U.S. Dist. LEXIS 146922, at *14 (N.D.N.Y. Aug. 26. 2014) (quoting 20 C.F.R. § 404.1513(e) ) (alterations in original), adopted, 2014 U.S. Dist. LEXIS 146724 (N.D.N.Y. Oct. 15, 2014). The Commissioner is "free to decide that the opinions of 'other sources' ... are entitled to no weight or little weight," but "those decisions should be explained." Piatt, 80 F.Supp.3d at 493 (citation omitted). "The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin, No. 15-CV-6119-FPG, 2016 WL 1466562 at *4, 2016 U.S. Dist. LEXIS 50448 at *13 (W.D.N.Y. Apr. 14, 2016). An ALJ is not free to disregard a medical opinion solely on the basis that the opinion is from a nonmedical source. Kelly v. Astrue, No. 09-CV-1359, 2011 WL 817507 at *5-6, 2011 U.S. Dist. LEXIS 21009 at *15-16 (N.D.N.Y. Jan. 18, 2011) (ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone), adopted, 2011 WL 807398, 2011 U.S. Dist. LEXIS 20965 (N.D.N.Y. Mar. 2, 2011).
Here, the ALJ's written determination easily satisfies the requirements for consideration of "other sources." Plaintiff treated with Ms. Collins on four occasions between March 14, 2014 and April 17, 2014. (Dkt. 7 at 312). In a letter to Plaintiff's counsel dated February 23, 2016, Ms. Collins stated that she diagnosed Plaintiff with PTSD, and that Plaintiff's symptoms included difficulty concentrating; frequent panic attacks; hear[t] palpitations; sleep disturbance; hyper-vigilance; and flashbacks. (Id. ).
In March 2014, Ms. Collins completed a questionnaire in which she opined that Plaintiff was motivated to learn to cope. (Id. at 296). Ms. Collins further found that Plaintiff had "good" speech, thought, and perception; "very good" attention and concentration, orientation, memory, and information; "good" insight and judgment; and "variable" mood and affect. (Id. ). Ms. Collins also found that Plaintiff had "no problem" engaging in her activities of daily living. (Id. at 297). Despite these relatively positive findings relating to Plaintiff's mental functioning, Ms. Collins noted that Plaintiff was "easily distracted" and found it difficult to concentrate, and that Plaintiff's symptoms keep her from exploring work opportunities. (Id. at 297-98). Notably, these findings appear to be at odds with Ms. Collins's assessment that Plaintiff had good attention, memory, and concentration. At the end of the questionnaire, Ms. Collins indicated that she could not provide a medical opinion regarding Plaintiff's ability to perform work-related activities. (Id. at 299). The inconsistencies in Ms. *129 Collins's evaluation were noted by Dr. England. (Id. at 41).
With regard to Ms. Collins's opinion, the ALJ explained that it was entitled to little weight because it was not well supported by the treatment record or objective medical evidence. (Id. at 25). Indeed, Ms. Collins herself indicated that she could not provide a medical opinion as to Plaintiff's ability to work, and the evaluation is not supported by any underlying medical records from Ms. Collins. Further, the ALJ explained that the evaluation contained an opinion on the ultimate issue of disability, an issue which is reserved for the Commissioner. (Id. ) ("[a]n individual's residual functional capacity and whether an individual is 'disabled' under the Act are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved to the Commissioner."). Additionally, the ALJ noted that a social worker is not an "acceptable medical source" as that term is defined in the regulations, and is therefore not controlling. (Id. ). Finally, the ALJ found Ms. Collins's opinion to be inconsistent with other substantial evidence in the record which, as explained above, was a fact discussed at length throughout the hearing testimony and in the ALJ's written determination. (Id. at 23-25, 41).
In sum, the Court finds that the ALJ adequately explained his reasoning for assigning "little weight" to the opinion of Ms. Collins, and that his assessment of her opinion was reasonable, in light of all the evidence in the record. Plaintiff's contention that the ALJ "mischaracterized" Ms. Collins's opinions is inaccurate, and amounts to no more than a disagreement with the ALJ's assessment and weighing of the evidence.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.